FILED
1/7/15 10:20 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| MICHELE A. KOHAR, | : | Case No. 14-24485-TPA |
| *Debtor* | : | Chapter 13 |
| | : | |
| RUSHMORE LOAN | : | |
| MANAGEMENT SERVICES, LLC, | : | Related to Doc. No. 11 |
| *Movant* | : | |
| | : | |
| v. | : | |
| | : | |
| MICHELE A. KOHAR and | : | |
| MICHAEL J. KOHAR, | : | |
| *Respondents* | : | |

*Appearances*: Christopher L. Borsani, Esq., for the Movant
Michele A. Kohar, pro se Debtor/Respondent
Michael J. Kohar, pro se Co-debtor/Respondent

## MEMORANDUM OPINION

Movant, Rushmore Loan Management Services, LLC ("Rushmore") filed an ***Expedited Motion for Relief from Stay Nunc Pro Tunc, to Dismiss Case with Prejudice and for Sanctions*** ("Motion") at Document No. 11, naming the Debtor and her non-filing co-debtor husband (collectively referred to hereinafter as "the Kohars") as Respondents. The *Motion* alleges that the Kohars are serial bad faith filers who have abused the bankruptcy process so that they can continue to reside in their residence, all while not paying anything toward the mortgage obligation the property secures. The Debtor filed a *Response* at Doc. No. 29. An evidentiary hearing on the *Motion* was held on December 16, 2014. Upon consideration of the *Motion* and the evidence

1

presented, the Court will grant the *Motion*.[1]

The Kohars executed a Note and Mortgage on September 5, 1998, in favor of Central Money Mortgage Co. (IMC), Inc. in the original principal amount of $85,000.[2] *Movant Exhibits A, B*. The Mortgage was on the Kohars' principal place of residence at 2401 Ridge Road Ext., Ambridge, Pa. ("the Property") and it was properly recorded in Beaver County. The Note and Mortgage were subsequently assigned to Act Properties, LLC, which is an entity owned and 0controlled by UBS-SSG. The original assignment documents were lost, but a "Lost Assignment Affidavit" was recorded in Beaver County on July 9, 2008. *Exhibit C*. On January 20, 2010 Act Properties assigned its interest in the Note and Mortgage to Wells Fargo Bank, N.A. ("Wells Fargo") as Trustee for RMAC REMIC Trust, Series 2009-9 ("2009-9 Trust"), which assignment was recorded in Beaver County. *Exhibit D*. Finally, on November 11, 2011 Wells Fargo as the Trustee for the 2009-9 Trust assigned the Note and Mortgage to itself as Trustee for the RMAC Pass-Through Trust, Series 2010-A ("2010-A Trust"), which assignment was recorded in Beaver County. *Exhibit E*. Rushmore is the servicing agent for the Mortgage and on May 9, 2012 it was given a power of attorney by the 2010-A Trust to act on its behalf in that respect. *Exhibit F*.

---

[1] The Court's jurisdiction to hear this matter under *28 U.S.C. §1334* has not been raised as an issue. The various matters raised in the Motion are core matters under *28 U.S.C. §157(b)(2)(A), (G) and (O)* and therefore the Court's jurisdiction to decide the matter is clear.

[2] The Movant acknowledges that the Kohars were discharged from any personal liability on the Note through a Chapter 7 bankruptcy case they filed in 2007. *See* Case No. 07-25560-MBM. It should therefore be understood that the matter presently before the Court relates solely to a foreclosure on the Mortgage.

In 2007 a foreclosure action on the Mortgage against the Kohars was initiated in Beaver County at No. 10914-2007 ("the Foreclosure Action"). The Foreclosure Action had a complex procedural history that included a number of scheduled and then cancelled sheriff sales of the Property.[3] Eventually, however, on July 26, 2011 a default judgment against the Kohars was entered in the Foreclosure Action in the total amount of $136,621.54, which included $69,692.45 in outstanding principal and specified an ongoing per diem interest of $17.17.[4] *Exhibit W*. On August 1, 2011, the Kohars filed a motion to strike that judgment, but that motion was denied on August 4, 2011. *Exhbit Z*. The Debtors then appealed to the Pennsylvania Superior Court which affirmed the judgment in a Memorandum Opinion dated November 13, 2013. *Exhibit AC.*

Following the dismissal of the seventh Kohar bankruptcy (see Chart below), and the failure of Mr. Kohar to post the required bond to secure a stay pending appeal, the Property was listed on the November 10, 2014 Beaver County Sheriff Sale List for a 10:00 A.M. sale. Counsel for Rushmore monitored the PACER docket in the days leading up to the sale just in case another bankruptcy filing was made, checking it the last time at 9:30 A.M. on November 10th. Seeing nothing, the Sheriff Sale proceeded and concluded at 10:07 A.M. on the 10th, with the Property being sold to Wells Fargo for costs. Unbeknownst to counsel, the Debtor had filed the current case, the eighth Kohar bankruptcy, at 9:37 A.M. that date. The *Motion* asks that Rushmore be granted relief

---

[3]   That procedural history is recounted in an October 25, 2011 "1925(a) Opinion" issued by Judge McBride of the Beaver County Court of Common Pleas. *See Movant's Exhibit AB*.

[4]   The interest rate specified in the Note was 8.99%. The Debtor did not object to application of the 8.99% interest rate as to the arrearages. Given the principal balance of $69,692.45, annual interest would be $6,265.35, which equals daily interest of $17.17 when rounded off.

from stay on a *nunc pro tunc* basis, and also that the case be dismissed with prejudice and sanctions be imposed.

Prior to the evidentiary hearing, Rushmore filed a *Motion in Limine to Prohibit Relitigation of Amounts Owed Under Note and Mortgage and Whether Rushmore Acting as Agent for Wells Fargo Bank, N.A. has Standing to Enforce the Note and Mortgage Pursuant to the Rooker-Feldman Doctrine* ("Motion in Limine") at Doc. No. 35. Not only was documentary evidence admitted to substantiate the existence of the judgment in the Foreclosure Action at the evidentiary hearing, the Debtor herself admitted all of the essential facts concerning the judgment.

Given the finality of the Foreclosure Action judgment, which was both entered and affirmed on appeal prior to the filing of the Debtor's petition, and the identity of the subject matter involved in both the Foreclosure Action judgment and the *Motion*, it is clear that the *Rooker-Feldman* doctrine applies. *See Great W. Mining and Mineral Co. v. Fox-Rothschild, LLP,* 615 F.3d 159, 166 (3d Cir. 2010) (setting forth test to determine when *Rooker-Feldman* doctrine applies). The Court therefore granted the *Motion in Limine* and found that the judgment established the fact of default and the amount due on the Mortgage as of the date it was entered. *See, e.g., Gray v. Martinez*, 465 Fed. App'x 86 (3d Cir. 2012) (entry of default judgment in foreclosure action that debtor unsuccessfully tried to strike, and which was then affirmed on appeal, was sufficient to trigger *Rooker-Feldman* doctrine).

The Kohars also questioned the standing of Rushmore to pursue relief against them related to the Mortgage. Were it free to do so, the Court itself might have some question as to the exact chain of title by which Rushmore has come to have standing. The Foreclosure Action was

initiated by Deutsche Bank National Trust Company as a trustee, with Act Properties, LLC subsequently substituted as the plaintiff in the case on September 12, 2008, and Wells Fargo substituted as plaintiff on July 26, 2011. The evidence presented at the evidentiary hearing did not establish how Deutsche Bank or the trust for which it was acting as trustee ever came to have any interest in the Mortgage and Note such that Deutsche Bank was a proper party plaintiff to have filed the Foreclosure Action. There would thus appear to be something of a gap in the chain of title that the Court would have preferred to have been bridged at the hearing.

Despite that seeming gap, however, the Court finds that under the *Rooker- Feldman* doctrine it may not "look behind" the July 26, 2011 Foreclosure Action judgment to inquire about the standing of Deutsche Bank, or Act Properties, LLC for that matter.

First, it is clear that the Foreclosure Action judgment implicitly, but conclusively, establishes that Wells Fargo had standing and was a proper party to obtain such judgment, and that this Court lacks the jurisdiction to reexamine that issue. The cases so holding are legion. *See, e.g., In re Washington*, 469 B.R. 587 (Bankr. W.D. Pa. 2012) (*Rooker-Feldman* doctrine prevented debtor from challenging the standing of mortgagee to file a proof of claim when the state court had already entered a foreclosure judgment in favor of that mortgagee); *In re Stewart*, 473 B.R. 612, 630-31 (Bankr. W.D. Pa. 2012) (it would be impossible for bankruptcy court to hold that mortgagee did not have claim secured by debtors' property without reviewing or rejecting state foreclosure judgment); *Sheikhani v. Wells Fargo Bank*, 577 Fed. App'x 610 (7th Cir. 2014) (*Rooker-Feldman* doctrine prevented appellant from pursuing argument that foreclosing entity was not the true owner of the loan because district court lacked jurisdiction to consider such argument), *In re Agard*, 444 B.R.

5

231, 243-44 (Bankr. E.D. N.Y. 2011) (*Rooker-Feldman* doctrine prevented standing challenge where net effect of upholding such challenge would be to deny the mortgagee bank rights granted to it by state court judgment); *Schmid v. Bank of America, N.A.* 498 B.R. 221, 225 (W.D. Wis. 2013) (citing cases); *In re Kalid*, 472 B.R. 1 (Bankr. E.D. Mich. 2012) (*Rooker-Feldman* doctrine prevented bankruptcy court from reviewing propriety of pre-petition state court judgment notwithstanding that at time judgment was entered plaintiff-lender had already assigned its interest in mortgage note to another entity); and, *In re Hinson*, 481 B.R. 364 (Bankr. E.D.N.C 2012) (bankruptcy court barred by *Rooker-Feldman* doctrine from finding that holder of state foreclosure judgment lacked standing to file proof of claim because to do so would mean state court had erred in allowing it to foreclose on property).

Second, at the evidentiary hearing Rushmore established that it was the servicer of the Mortgage and that pursuant to a Limited Power of Attorney dated May 9, 2012, it had received authority from Wells Fargo to act as its attorney-in-fact and pursue remedies related to the Mortgage. *See Exhibit F*. The proffered document, which was signed by a Wells Fargo Vice President, witnessed, and notarized, granted Rushmore "full authority and power" to execute and deliver on behalf of Wells Fargo all documents necessary to conduct any foreclosure or similar procedure, and to effect any sale of real property acquired through foreclosure. *Id*. at ¶¶1(I), (iv). The Kohars presented nothing to challenge or dispute the validity of the Limited Power of Attorney, and the Court finds the agency power granted to Rushmore therein to be sufficient to authorize it to pursue relief from the stay to effectuate the Sheriff Sale of the Property. The Court therefore concludes that Rushmore is a proper party in interest to be pursuing this matter, including relief from the automatic stay. *See, e.g., 11 U.S.C. §362(d)* ("party in interest" may move for relief from stay),

*In re Alcide*, 450 B.R. 526, 538 (Bankr. E.D. Pa. 2011) (mortgage servicer may be proper party in interest to purse relief from stay if the servicer is acting within the scope of its authority as the mortgage holder's agent), *In re Phillips*, 491 B.R. 255 (Bankr. D. Nev. 2013) (loan servicer that was authorized agent of assignee of deed of trust note had requisite colorable claim to receive payment under note and thus had standing to move for relief from stay). Thus, the Kohars' argument that Rushmore lacks standing in this matter is without basis and is rejected.

With that background in mind, the Court can now turn to a consideration of the relief being requested in the *Motion*. Essentially, Rushmore argues that the Kohars have been abusing the bankruptcy process by filing a series of cases over the years that have enabled them to remain in the Property while paying little or nothing toward the Mortgage. Moreover, Rushmore or its principal have also been paying the annual real estate tax and the insurance for the Property. Rushmore argues that it is fundamentally unfair to allow this state of affairs to continue.

The Respondents are clearly serial bankruptcy filers, as is evident from the following chart that summarizes the various cases they have filed together, or individually, over the last decade and all involving their attempts to prevent foreclosure on the Property:

| No. | Case No. (Ch.) | Date Filed | Filed | Status | Comment |
| --- | --- | --- | --- | --- | --- |
| 1 | 05-24197-JAD (13) | April 6, 2005 | Jointly | Dismissed on April 13, 2006 | Debtors more than $20,000 behind in plan payments when case dismissed |
| 2 | 06-22294-TPA (13) | May 23, 2006 | Jointly | Dismissed on March 29, 2007 | Debtors not making plan payments; more than $14,000 behind when case dismissed. |

| 3 | 07-25560-MBM (7) | Sept. 4, 2007 | Jointly | Closed on April 10, 2008 | Debtors received a discharge |
|---|---|---|---|---|---|
| 4 | 08-26086-TPA (13) | Sept. 15, 2008 | Jointly | Dismissed February 9, 2009 | Debtors had failed to make any full plan payment and were more than $7,000 behind when case dismissed. |
| 5 | 11-25716-TPA (13) | Sept. 9, 2011 | Indiv. (Michele) | Dismissed September 29, 2011 | Debtor failed to cure filing deficiencies |
| 6 | 11-26937-TPA (13) | Nov. 14, 2011 | Indiv. (Michele) | Dismissed March 21, 2013 | Debtor failed to make plan payments |
| 7 | 13-24420-TPA (13) | October 21, 2013 | Indiv. (Michael) | Dismissed on August 15, 2014 | Debtor not making plan payments; dismissal appealed and pending, but no brief filed by Debtor. |
| 8 | 14-24485-TPA (13) | Nov. 10, 2014 | Indiv. (Michele) | Case still pending | |

The Court need not go into greater detail for all of these cases, but a closer look at the two most recent cases prior to the pending one are revealing on the issue of whether the Kohars were pursuing them in good faith.

In Case No. 11-26937, which was filed after the Foreclosure Action judgment had been entered, the Debtor nevertheless objected to the claim concerning the Mortgage filed by Rushmore and proposed a plan with payments of only $100 per month.[5] The Court eventually issued an Order to Show Cause against the Debtor on December 18, 2012. *Movant's Exhibit L.* This

---

[5] The Debtor was deemed to have filed an adversary pleading in that case on December 12, 2002, against Wells Fargo challenging its lien on the Property. *See* Adv. No. 12-2519. Wells Fargo raised the Foreclosure Action judgment in its answer, asserting that said judgment implicated the *Rooker-Feldman* doctrine. *See* Doc. No. 2 at ¶¶66, 95-96. However, the adversary proceeding was dismissed as moot on February 26, 2013, after the main case was dismissed and before the legal issue of the *Rooker-Feldman* doctrine ever came to the Court's attention.

Order to Show cause noted, for example, that the Debtor's plan identified Wells Fargo as a long-term creditor but provided for a monthly payment of $0 to it and showed pre-petition arrears of $0. Furthermore, even though the proposed plan payments were only $100 per month, as of the date the Order to Show Cause was issued, the Debtor had made only three such payments. The Court further noted that at a hearing on August 15, 2012, the Debtor had said she did not dispute that she owed money on the Mortgage, she just disputed the identity of the proper party to be paid. With that, the Court informed her she would still need to make the payments, which would include the undisputed current principal and interest payment along with an amount toward admitted arrearages, which the Chapter 13 Trustee would hold until any issue about the proper payee was resolved.

On January 8, 2013, the Court issued an Order vacating the Order to Show Cause. *Exhibit M.* That Order provided that the Debtor would have to propose a plan with monthly payments of at least $682.51 (of which $582.50 would go toward the Mortgage) in order to meet the good faith standard required under the *Bankruptcy Code*. The Debtor was ordered to make a $682.50 plan payment for January by a date certain, but she failed to do so and affidavits of default were filed by Wells Fargo and the Chapter 13 Trustee. The case was dismissed and the Debtor subsequently filed a motion seeking to have the order of dismissal vacated by attempting to show she had in fact made the required January payment. However, the Chapter 13 Trustee filed a response to that motion convincingly demonstrating that the Debtor had only made such payment after the affidavit of default had been filed. *See* Case No. 11-26937 at Doc. No. 191. The Court issued an Order on February 26, 2013, denying the motion to vacate and quoting from past hearings during which the Debtor's payment obligations were clearly identified by the Court and acknowledged by her. That same Order characterized the Debtor as being "disingenuous at best" in

her efforts to get the dismissal vacated, and stated that the Court "cannot condone" her conduct. *Id.* at Doc. No. 192.

In Case No. 13-24420, filed by Michael Kohar, the Debtor's husband, he likewise proposed only a $100 per month plan payment and an avoidance of the Rushmore claim, raising similar objections as had his wife in the prior case. The Court directed the parties to participate in its Loss Mitigation Program and ordered him to make monthly adequate protection payment of $800 while that was ongoing. Mr. Kohar failed to make the required payments, failed to appear at a conciliation conference, and his case was dismissed with prejudice on August 15, 2014. He filed an appeal and sought a stay pending appeal. The Court granted the stay motion, but conditioned it on the posting of a $10,000 bond, noting that based on his Schedules, Michael Kohar would have received a cumulative total of almost $20,000 in projected disposable income during the case up to that point which could have been going toward payment of the debt on the Mortgage. The Court also required that Mr. Kohar make monthly payments of $1,000 to the Ch. 13 Trustee for the benefit of Wells Fargo during the appeal to keep the stay in place. He failed to meet these conditions and as a result the stay pending appeal automatically terminated on October 31, 2014. Additionally, a review of the docket in the appeal shows that Mr. Kohar has never filed an appellate brief, and on December 23, 2014, an order to show cause was issued directing him to appear and show cause why the appeal should not be dismissed. *See* Docket of Case # 2:14-cv-01427-CB, available via PACER.[6]

---

[6] Many of the relevant docket entries in the related bankruptcy and state court cases were admitted as exhibits by Rushmore. *See Exhibits G-W, 2-AF*. Although the December 23, 2014 Order to Show Case in the Michael Kohar appeal was not admitted as an exhibit, the Court can take judicial notice of its existence. *See, e.g., In re Medford Crossings North, LLC*, No. CIV. 11-5767 RBK, 2012 WL 1981718, at *5 (D.N.J. May 31, 2012).

10

The Debtor in the present case has continued to demonstrate a cavalier attitude, or worse, with respect to the Court's orders. For instance, upon filing her petition on November 10, 2014, she also applied for the right to pay her filing fee in installments, proposing that the first installment of $100 would be paid by December 1, 2014. *See* Doc. No. 6. That Application was promptly granted the same day, the Court ordering her to pay the installments "on the terms set forth in Debtor's Application." Doc. No. 8. As of the date that this Memorandum Opinion is being finalized (January 6, 2015) the Debtor has still not paid anything toward her filing fee. To cite one more example, following the December 16, 2014 evidentiary hearing the Court issued a Post-Hearing Order that required, *inter alia*, that on or before December 19, 2014 the Debtor file a copy of an actual payment document reflecting a payment she allegedly made to the Chapter 13 Trustee on or about December 10th. That deadline has passed and no such filing has been made.

The entire history of bankruptcy filings by the Kohars thus demonstrates a pattern whereby they have taken advantage of the protections provided by the Bankruptcy Code, without feeling any concomitant responsibility to observe the obligations expected of them in return. Not only has little or nothing been paid on the Mortgage by them in years (there has been no reduction in principal since 2006), the non-payment has been exacerbated by their failure to pay the real estate taxes and insurance on the Property, causing Wells Fargo/Rushmore to have to do so in order to protect their interest. The $136,621.54 obligation as reflected in the Foreclosure Action judgment has now grown to over $200,000 as of October 3, 2014. *Motion* at ¶16; *Exhibit 4*; *Audio Transcript of Proceedings* dated Dec. 16, 2014, 10:55:00 to 11:04:40. Included in this amount is unpaid principal of $69,692.45, accrued and unpaid interest of $54,728.57 (increasing at a per diem of $17.17), late charges of $962, costs and attorney fees related to foreclosure on the Property totaling

11

$33,747.11, charges for forced place insurance $8,972.13, and unreimbursed payment of real estate taxes on the Property that total $29,433.37. There has been no reduction on the principal since January 2006, and no payment of any kind since February 27, 2009. *See Exhibit 4*.

Rushmore also argues that *nunc pro tunc* stay relief should be granted to validate the November 10th Sheriff Sale. It argues that stay relief would be warranted either for cause under *11 U.S.C. §362(d)(1)*, or because the Kohars lack any equity in the Property and the Property is not necessary for an effective reorganization, under *Section 362(d)(2)*. As to the "cause" basis, Rushmore points to the fact that it has not been adequately protected in any of the previous seven bankruptcies and argues that there is no reason to believe that will change in the present case. Rushmore also notes that the Kohars have been discharged from any personal liability, and thus the stay relief only goes to the enforcement of *in rem* rights in the property. Further points raised in the Motion and apparently going toward the "for cause" argument are the fluctuating, and the generally decreasing, value of the Property as stated by the Kohars in their various cases (ranging from $150,000 down to $90,000), *See Motion* at ¶¶77-82, and the Kohars lack of candor to the Court, *see id*. at ¶¶83-93.

The Court agrees that prospective stay relief would be warranted under either prong of *Section 362(d)*.[7] The decision whether to lift the automatic stay under *Section 362(d)* is committed to the discretion of the bankruptcy court and is to be determined by examining the totality

---

[7] Given the serial filings, the lack of payments by the Kohars, the highly-questionable plan proposed, and the recent "tag team" approach pursuant to which they have recently begun filing alternate individual cases, it is also possible stay relief might be warranted under *Section 362(d)(4)*. Rushmore, however, has not argued for that provision and the Court does not rely on it.

of the circumstances. *In re Miller*, 501 B.R. 266, 277 (Bankr. E.D. Pa. 2013). Included within this Court's discretion is the determination whether "cause" exists to support relief from the stay. Under the circumstances presented, the Court finds that such cause exists in the form of the long time period that has elapsed with no meaningful payment on the Mortgage debt by the Kohars, their abusive use of the bankruptcy process and lack of good faith efforts as outlined above, and the lack of adequate protection for Rushmore and, ultimately, the holder of the Mortgage. Thus, relief from stay for cause under *Section 362(d)(1)* is appropriate.

The Debtor also lacks equity in the Property, meting the condition of *Section 262(d)(2)(A)*. The total debt on the Mortgage has grown to over $200,000, well over even the highest valuation of the Property that has been asserted by the Kohars ($150,000) during their numerous cases at various times.[8] The Debtor has also failed to meet her burden under *Section 362(d)(2)(B)* of showing that the Property is necessary to an effective reorganization. Even if the Court charitably assumes that the Property is "necessary" merely because it is the Debtor's residence,[9] her burden under *Section 362(d)(2)(B)* is broader than that and includes the requirement that she show that there is a reasonable possibility of a successful reorganization within a reasonable

---

[8] No specific value of the Property was established by the Debtor at the December 16th hearing. Rushmore placed in evidence the Debtor's Schedule A which referenced a $150,000 value for the Property.

[9] It is not at all clear whether this assumption is even warranted. There was no evidence presented by the Debtor to show that continued occupancy of the residence was necessary for the Kohars to generate income, and no evidence to show that being required to move from the residence would create an undue hardship on them for any non-financial reason, for instance a lack of alternative housing available in the area. In other words, the Court is giving the Debtor a substantial benefit of the doubt in assuming the Property to be necessary for an effective reorganization.

period of time. *See In re Mullock*, 404 B.R. 800, 805-06 (Bankr. E.D. Pa. 2009). The Debtor has failed to provide evidence to show that there is any reason why the Court should conclude that the present case will turn out any differently than all of the other previous, failed cases. Since the Debtor lacks equity in the property and has failed to show a reasonable possibility of a successful reorganization within a reasonable time period, relief from stay under *Section 362(d)(2)* is appropriate.

The question of relief from stay is complicated, however, by the fact that Rushmore is seeking such relief on a retroactive basis. In effect, Rushmore is asking that the Court annul the automatic stay by retroactively ratifying the November 10, 2014 Sheriff Sale. The overall test to be applied when deciding a motion seeking *nunc pro tunc* relief from the stay is balancing of its equities, but three factors must be considered as most important. *See, In re Myers*, 491 F.3d 120, 129 (3d Cir. 2007). First, was the creditor that is seeking the relief aware of the bankruptcy filing or did it encourage a violation of the stay? There is no evidence of that in the present case. The record is clear and uncontroverted that Rushmore's counsel checked the docket right up until a half-hour prior to the Sheriff Sale in anticipation that there might be a filing due to the Kohars' previous history and found nothing. That was reasonable and essentially all that can be asked of a creditor in such circumstances, especially when the record is clear the Kohars made no attempt to advise counsel of the filing. Thus, the first factor favors the grant of *nunc pro tunc* relief.

Second, did the Debtor engage in inequitable, unreasonable, or dishonest behavior? On an overall basis, the whole history of the serial filings by the Kohars as documented above can be viewed as such behavior and this factor may be found to be met in that respect. However, even

14

if the focus is narrowed to the particulars of the November 10th Sheriff Sale itself, the Court finds that the Debtor acted unreasonably. Knowing that she filed her bankruptcy petition only a few minutes prior to the scheduled sale, of which she was aware, the Debtor had some obligation to apprise the Sheriff or Rushmore immediately if she wanted the sale stayed because of the filing. She had certainly been through enough scheduled and then cancelled sheriff sales of the Property in the past to know how the process worked. By failing to give any prior notice of her filing, thereby allowing the sale to proceed, the debtor acted at least unreasonably, so this factor as well favors *nunc pro tunc* relief.

Third, would Rushmore be prejudiced by a denial of *nunc pro tunc* relief? It clearly would. If such relief was denied, the entire sale process would have to be restarted at a cost of additional time and expense to Rushmore, which it can never have a hope of recovering from the Debtors given their prior discharge from any personal liability.

All of the relevant factors thus support a grant of the Motion insofar as it seeks retroactive relief from the automatic stay. The Court has not been presented with any compelling countervailing reason why such relief should not be granted. It also needs to be noted that there is a co-debtor stay involved in this case because Michael Kohar is a party to the Mortgage even though he is not himself a debtor in the present case. *See 11 U.S.C. §1301(a)*. For reasons that have been addressed above, it is clear to the court that the interests of Rushmore and Wells Fargo would be irreparably harmed unless *nunc pro tunc* relief is granted with respect to the co-debtor stay as well, and the Court will therefore do so pursuant to *Section 1301(c)(3)*.

In addition to relief from the automatic stay, the Motion also asks that the Court dismiss the case, with prejudice, for cause under *11 U.S.C. §1307(c)*. Rushmore argues that unless the case is dismissed with prejudice there will inevitably be a ninth bankruptcy filing to further frustrate its efforts to recover and sell the Property. A bankruptcy court has considerable discretion in determining whether "cause" exists under *Section 1307(c)*, and if so whether dismissal is the appropriate remedy. *See, e.g., In re Pierson*, No. CIV.A. 08-1015, 2009 WL 1424472, at *2 (E.D. Pa. May 19, 2009). Were dismissal the only remedy being sought in the *Motion*, the Court would have to give it serious consideration because of the history of serial filing and failure to make plan payments by the Kohars, and the fear that they could simply file another case and thwart Rushmore. However, Rushmore has also sought, and now been granted, retroactive relief from the automatic stay which ratifies the November 10, 2014 Sheriff Sale of the Property, and which will permit Rushmore to proceed as necessary to obtain possession of the Property from the Kohars by appropriate legal means should they refuse to voluntarily vacate the premises.

That fact fundamentally changes the status quo since, as of the time of the filing of the Debtor's petition, the legal and equitable title to the Property was held not by the Kohars, but rather by Wells Fargo, the purchaser at the Sheriff sale, meaning the Property is not included in the Debtor's bankruptcy estate. *See, e.g., In re Pulcini*, 261 B.R. 836, 841 (Bankr. W.D. Pa. 2001). It would be speculation were the Court to attempt in advance to say what might happen if the Kohars or one of them were to file yet another bankruptcy in an effort to disrupt Rushmore from recovering the Property through the automatic stay, but at a bare minimum the Court can certainly say that the Kohars are in a less favorable position than they were previously. The difference is significant enough that the Court sees no reason at this time to dismiss the current case, with or without prejudice, so that portion of the *Motion* will be denied.

Finally, the *Motion* seeks sanctions against the Debtor pursuant to *Fed.R.Bankr.P. 9011*. *See Motion* at ¶¶128-130. That part of the *Motion* is procedurally defective in a number of respects. First, a motion seeking sanctions under *Rule 9011* is to be made separately, and not as part of another motion. It seems obvious that this requirement is intended to highlight the seriousness of the request and to ensure it does not get lost among the trees. Rushmore failed to file a separate motion for sanctions. Second, and more importantly, such motion is required to "describe the specific conduct alleged to violate [*Rule 9011](b),*" and is to be served on the party from whom sanctions are sought at least 21 days before it is filed with the Court. These are important requirements because they give the allegedly offending party the chance to withdraw or correct the misconduct and thus avoid a sanction. The *Motion* does not specify exactly what conduct of the Debtor is being relied upon to support an award of sanctions, it merely states in a broad stroke that the Debtor and her husband "are clearly abusing the bankruptcy process on a repeated basis." *Motion* at ¶130. Furthermore, there is no evidence that the *Motion* was served on the Debtor prior to being filed with the Court.[10] For these reasons the request for sanctions in the *Motion* will be denied.

An appropriate order follows.

Dated: January 7, 2015

_____
Thomas P. Agresti, Judge
United States Bankruptcy Court

Case administrator to serve:
    Debtor
    Christopher Borsani, Esq.
    Ronda Winnecour, Esq.

---

[10] The requirement for prior service before filing is excused if the filing of the petition itself is the alleged misconduct. *See Rule 9011 (c)(1)(A)*. That exception could potentially apply here, but the *Motion* does not explicitly state so, and the Court is not willing to make that leap.

17